**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

| | |
|---|---|
| HARBOR VIEW VA, LLC, | |
|     Plaintiff, | |
|     v. | Case No. 4:26-cv-111 |
| CITY OF HAMPTON, *et al.* | |
|     Defendants. | |

**OPINION & ORDER**

Before the Court is Plaintiff Harbor View VA, LLC's renewed motion for a temporary restraining order (TRO) and preliminary injunction. ECF No. 9. For the reasons stated herein, the motion is **GRANTED IN PART**, as to the TRO, and the Court will hold a hearing on the request for a preliminary injunction.[1]

**I.     BACKGROUND**

In May 2026, Harbor View acquired real property located at 2101–2121 Kecoughtan Road in Hampton, Virginia. ECF No. 11 ¶ 3. The property includes nine condemned apartment buildings. ECF No. 10-3 at 4–5. Prior to taking title, Harbor View engaged a structural engineer to prepare a report about the property, to help determine whether it would be more cost-effective to repair the damage or to tear the buildings down and rebuild. ECF No. 11 ¶ 5; ECF No. 10-3 at 4.

---

[1] The Court has considered the arguments in the briefing and concluded that oral argument on the TRO request is not necessary. *See* Fed. R. Civ. P. 18; E.D. Va. Civ. R. 7(J).

In a June 11, 2026 report, the engineer explained that water damage, mold, and floor system failures rendered the buildings uninhabitable. ECF No. 10-3 at 4. But though the interior walls needed repairs, the engineer reported that those walls were "not typically load bearing." ECF No. 10-3 at 11. As a result, the engineer found that "there [was] no immediate concern or obvious evidence of imminent catastrophic collapse of the primary structure." *Id.* Ultimately, the report concluded that "the buildings [could] be structurally rehabilitated with little effort" and that it would cost less to repair the damage than to demolish the structures and rebuild. *Id.* at 4.

Harbor View shared the engineer's report with the City of Hampton. ECF No. 11 ¶ 8. On June 9, 2026, the engineer and representatives of Harbor View met with City employees for a tour and physical inspection of the property. *Id.* ¶ 10. The engineer explained to the City that the water damage was "superficial in nature" and did not affect the "load-bearing elements" of the buildings, so "the properties" were "structurally sound" and "could be renovated." *Id.*

On June 24, 2026, the City sent Harbor View a memorandum alleging that the buildings on the property "constitute and imminent danger to life and public safety" and were subject to emergency demolition. ECF No. 10-4; *see* ECF No. 11 ¶ 13. Specifically, the City claimed that "the structures have deteriorated to such an extent that they are in imminent danger of at least partial collapse of interior walls, ceilings, and floors." ECF No. 10-4 at 2.

2

The memorandum asserted that the City's "determination [was] based upon prior engineering reports, current engineering evaluations," and the June 9, 2026 inspection. But "[t]o the best of Harbor View's knowledge, the City has never commissioned its own structural engineer report," so the June 11, 2026 report "is the only structural engineer's report in the City's possession." ECF No. 3 at 4.[2]

Harbor View's investigation suggests "there have been no incidents [that] have changed the nature of the property over the past two years." ECF No. 11 ¶ 16. The property was secured and patrolled daily for signs of trespass or instruction. *Id.*

As of July 10, 2026, it appeared that the City had torn down one of the garage buildings at the property. ECF No. 3 at 6; *see* ECF No. 3-9.

On July 12, 2026, Harbor View filed a complaint and an initial motion for a TRO and a preliminary injunction. ECF Nos. 1, 2. The Court denied the initial motion, based upon a pleading error that affected the likelihood of success on the merits. ECF No. 7.

Harbor View then filed an amended complaint and renewed its request for a TRO and preliminary injunction. ECF Nos. 8, 9. In its renewed motion, Harbor View asks the Court "to stop the City from demolishing the structures on Harbor View's property." ECF No. 9 at 1.

---

[2] Harbor View believes the property's previous owner "submitted a preliminary report to the City" that "likewise concluded that the structures are in sound condition," but that preliminary report is not before the Court. ECF No. 10 at 4 n.3.

3

## II.    LEGAL STANDARD

A district court, in its discretion, may issue a temporary restraining order pursuant to Fed. R. Civ. P. 65, if the movant shows that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (standard for granting a preliminary injunction); *see Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488, 501 (E.D. Va. 2021) ("The standard for granting a [temporary restraining order] or a preliminary injunction is the same.").[3]

When the defendant is the government, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Pierce v. N. Carolina State Bd. of Elections*, 97 F.4th 194, 225 (4th Cir. 2024).

## III.    ANALYSIS

### A.    Likelihood of Success on the Merits

Count I of the amended complaint seeks declaratory judgment that the property is not a nuisance. ECF No. 8 ¶¶ 26–35. Count II seeks damages pursuant to 42 U.S.C. § 1983 against Defendant Kimberly Mikel—the official with authority to make final decisions for the city in relation to the Virginia Property Maintenance Code, ECF No. 9 ¶ 3—based on deprivation of a property interest without due process

---

[3] Harbor View served the City with a copy of is motion, so Fed. R. Civ. P. 65(b) (governing issuance of a TRO without notice) does not apply. ECF No. 9 at 2; *but see infra* n.4.

of law. *Id.* ¶¶ 36–55. Harbor View adequately demonstrates that it is likely to succeed on both of those claims. [4]

### i.    Declaratory Judgment

Under Virginia law, "[t]he term 'nuisance' includes, but is not limited to . . . unsafe, dangerous, or unsanitary . . . buildings [] or structures which constitute a menace to the health and safety of the occupants thereof or the public." Va. Code § 15.2-900. Based on the reasoning outlined in the City's memorandum, it is clear that the City considers the property "unsafe" and "dangerous." Va. Code § 15.2-900.

But the City's concerns are exclusively related to the risk of structural collapse, not with the buildings' habitability, nor with issues related to mold or sanitation. *See* ECF No. 10-4 (citing "risk of injury or death" associated with "the unstable condition of the structures"). And because the buildings are vacant, the properties could only be a nuisance if they "constitute a menace to the health and safety of . . . the public." [5] Va. Code § 15.2-900; *see* ECF No. 11 ¶ 4.

Harbor View adequately demonstrates that the public is not affected by the conditions identified in the City's memorandum. First, "the property [is] secured," and it is "patrolled daily" to prevent "trespass or intrusion." ECF No. 11 ¶ 16. Of course, a full-scale collapse could affect members of the public farther away from the

---

[4] Count III purports to be a claim for a permanent injunction. ECF No. 8 at 15. An injunction is a remedy, not a standalone cause of action. Therefore, the Court will not analyze the request for a permanent injunction under the *Winter* standard.

[5] While the *conditions* that constitute a nuisance "are not limited to" those enumerated in Va. Code § 15.2-900, the requirement that either "occupants" or "the public" be affected is not flexible.

property. But the engineer's report—completed less than a month before the City's decision—persuasively explains that because the structural damage is to internal, non-load-bearing walls, there is "no immediate concern" that the exterior of the building will collapse. ECF No. 10-3 at 11. And Harbor View shows that the City likely has no more information about the condition of the property than is included in the engineers' report, from which it might have reasonably developed a different view. *See* ECF No. 11 ¶¶ 5, 10; ECF No. 3 at 4.

The City's cited fear about danger to "emergency response personnel" likewise does not satisfy Va. Code § 15.2-900. *See* ECF No. 10-4 at 2. There is no indication that emergency responders would actually "be required to enter, inspect, secure, or operate near the structure during the course of their duties," because the buildings are vacant and the public is excluded. *Id.*

For these reasons, Harbor View demonstrates that it is likely to succeed on its claim for declaratory judgment that the property is not a nuisance under Virginia law.

### ii.    *42 U.S.C. § 1983*

To succeed on its § 1983 claim, Harbor View would have to prove (1) it had a constitutionally protected property interest, and (2) an official acting under color of state law (3) deprived it of that interest (4) without due process of law. *Tri-Cty. Paving, Inv. c. Ashe Cty.*, 281 F.3d 430, 436 (4th Cir. 2002).

As the title holder, Harbor View has a constitutionally protected interest in the Kecoughtan Road property. *See* ECF No. 11 ¶ 3; *Board of Regents of State Colleges v.*

*Roth*, 408 U.S. 654, 577 (1972) (requiring "a legitimate claim of entitlement"). Demolition of buildings on the property certainly deprives Harbor View of that protected interest. As the "[c]ode [o]fficial," Defendant Mikel clearly acted under color of state law when she ordered that "all structures located on [the property] be demolished and removed," pursuant to the Virginia Property and Maintenance Code. ECF No. 10-4 at 2–3; *see Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001); Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006) (requiring action "fairly attributable to the state"); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 926 (1982) (§ 1983 color of law requirement identical to Fourteenth Amendment state action requirement).

Defendant Mikel's demolition order relied on Section 106.8 of the Virginia Property and Maintenance Code. ECF No. 10-4 at 2. That regulation enables a code official to tear down an "unsafe" structure if the owner fails to comply with a demolition order. 13 Va. Admin. Code § 5-63-490(G). But designating a building 'unsafe' requires notice that complies with § 106.3, including the requirement to "indicate the right of appeal by referencing the appeals section of [the building] code." 13 Va. Admin. Code § 5-63-490(B); *see also* § 5-63-500. The notice provided to Harbor View included no reference to the right to appeal.[6]

---

[6] This deficiency is not a mere technicality. As the Court explained in Part III.A.i. above, Harbor View is likely to prove that the property did not qualify as a nuisance under state law, which is closely related to the meaning of an 'unsafe structure.' So the right to appeal Defendant Mikel's determination could be critical.

For at least this reason, Harbor View shows that it is likely to prevail on its due process claim.

## B. Irreparable Harm

Harbor View asserts that because the buildings are made of concrete and steel, it would be "cost prohibitive" to replicate their construction "today," so if they are demolished, Harbor View would likely be unable to replace them. ECF No. 11 ¶ 7. While a jury could conceivably award damages to compensate Harbor View for the costs of demolition[7], cleanup, new planning, reconstruction, and lost profits associated with all of those things, proving those damages would require Harbor View to front all of those costs, which the evidence at this stage demonstrates cannot happen. *See id.* Therefore, the Harbor View shows it is likely to suffer irreparable harm absent a TRO.

## C. Balance of Equities & Public Interest

The third and fourth *Winter* factors also favor granting a TRO. Harbor View establishes that demolition of the buildings on its property would harm its interests both in the short term (because it would cost more to rebuild than to repair the structures, *see* ECF No. 10-3 at 4) and in the long term (because the City could withhold permits for redevelopment, *see* ECF No. 10 at 8–9).

The City has no comparable interest in tearing the buildings down. The notice claims that "the conditions present at the property create a substantial risk of injury

---

[7] 13 Va. Admin. Code § 5-63-490(G) enables a city to "recover the costs associated with . . . demolition" from the "property owner."

or death to any person who may enter the structures, occupy areas adjacent to the structures, or otherwise be in their vicinity" and that "emergency response personnel" would face a "significant hazard" if they were "required to enter, inspect, secure, or operate near the structures during the course of their duties." ECF No. 10-4 at 2. But the only health ad safety risk the City identified is that the structures "are in imminent danger of at least partial collapse of the *interior* walls, ceilings, and floors." *Id.* (emphasis added). So any risk of harm to people who may "occupy areas adjacent to the structures, or otherwise be in their vicinity" is minimal. ECF No. 10-4 at 2. And while the property is vacant and being patrolled to prevent entry, the risk of harm inside the buildings is also low. *See* ECF No. 11 ¶ 16.

### D. Security

Harbor View does not address what amount of security the Court should require under Fed. R. Civ. P. 65(c). Because it finds that the City has no significant interest in demolishing the buildings immediately, the Court finds that nominal security is appropriate. *See supra* Part C.

## IV. CONCLUSION

Plaintiff Harbor View VA, LLC's renewed motion for a temporary restraining order and a preliminary injunction (ECF No. 9) is **GRANTED IN PART**, as to the temporary restraining order.

For the reasons stated in this Opinion and Order, the City of Hampton and Defendant Kimberly Mikel **SHALL NOT** take any action to demolish any structure located on the property located at 2101–2121 Kecoughtan Road in Hampton, Virginia,

9

and identified in land records as Parcel #1003662, until the Court resolves Harbor View's request for a preliminary injunction.

Harbor View **SHALL** provide security in the amount of $1,000, payable to the Clerk of the Court.

The Court **RESERVES RULING** on the request for a preliminary injunction. The Court will hold a hearing on that request at 11:00 a.m. on August 3, 2026, at the courthouse in Norfolk.

Harbor View is **DIRECTED** to provide a copy of this Opinion and Order to the defendants on or before July 21, 2026.

If the defendants wish to submit briefing on the preliminary injunction request, they may do so on or before July 27, 2026. If either defendant files an opposition, Harbor View may submit a reply brief on or before July 30, 2026.

**IT IS SO ORDERED.**

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
July 20, 2026

10